DREW, J.
li.A.J. Ellis, Jr., appeals a judgment of forfeiture of a pickup truck and two separate sums of money valued at over $82,000 in the aggregate. He focuses on three alleged errors by the trial court which found that:
1. The state’s notices of seizure were valid;
2. Ellis’s attempt to contest the forfeitures was invalid; and
3. The lack of notice of final judgments [1] was not being adversely decisive with respect to these forfeitures, under these facts, due to the administrative nature of this process.
We affirm in all respects.
FACTS
On October 11, 2007, agents of the Monroe Metro Narcotics Task Force[2] executed *964 a search warrant for controlled dangerous substances at the home of the defendant, a suspected drug dealer with previous drug charges and no visible means of support.
Drugs were indeed discovered and seized, along with:
• a combined $85,453 in cash,[3] some taken from Ellis himself, and some taken from his premises; and
• a pickup truck, along with the title thereto.[4]
On October 15, 2007, the state timely filed an application for warrant of seizure for forfeiture pursuant to La. R.S. 40:2601(5), together with an ^affidavit of verification. On the same date, the trial court granted the warrant of seizure for forfeiture. This process effectuated a hold on the property, pending further disposition.
On October 23, 2007, the agents seized a bank account or accounts at IBERIA BANK, totaling $46,742.36.[5]
On October 25, 2007, the state timely filed a second application for warrant of seizure for forfeiture plus affidavit of verification, relative to these bank proceeds. The trial court executed this warrant, ordering the bank proceeds held pending further disposition. These documents were filed into the record on October 25, 2007.
Pursuant to the forfeiture statutes, the state timely filed two separate notices of pending forfeiture:
• The first, dated October 19, 2007, relative to the October 11, 2007, seizure of $35,453 in cash proceeds and the pickup truck, was served on the defendant on October 22, 2007; and
• The second, dated October 31, 2007, relative to the October 23, 2007, seizure of the $46,742.36 in bank proceeds, was served on the defendant on November 13, 2007.
On November 21, 2007, the claimant attempted to express his opposition to the process by filing a “Petition for Stipulation of Exemption And/or Notice of Claim Against Seized Property in Pending Forfeiture, and Request for Hearing for Return of Seized Property.”[6]
| ¿Crucially, the claim failed to comply with La. R.S. 40:2610, in these particulars:
• The claim was signed by his lawyer, when it should have been signed by the claimant himself;
• It was unsworn; and
• It was actually served on the Clerk of Court and the Metro Narcotics Task Force, even though R.S. 40:2610 A requires that the seizing agency and (critically) the district attorney be notified by certified mail, return receipt requested.
Even worse for Mr. Ellis, his defective filing of November 21, 2007, sought to *965 defend only the first seizures.[7] Consequently, Ellis made no pleading in the trial court in opposition to the second seizure— the forfeiture of the $46,742.36 in bank proceeds.
In other words:
• there are three parcels of property: the cash currency, the pickup truck, and the bank proceeds from IBERIA BANK;
• the claimant’s filing as to the cash currency and the truck did not comply with La. R.S. 40:2610 and is, therefore, without effect; and
• the claimant failed to include in his claim any reference to the $46,742.36 in IBERIA BANK proceeds, so nothing was before the trial court, and nothing is before us, pertaining to this sum of money.
Having received no certified notice, the district attorney reasonably assumed that the defendant had simply failed to respond to the seizure notices within the requisite 30 days. Accordingly, the state proceeded | .^administratively thereafter, effectuating no further service upon or notice to the defendant.[8]
In March 2008, four months after the defendant had filed his flawed claim, the state filed its application for forfeiture for the pickup truck and the combined monetary proceeds in excess of $82,000. Presumably the provision and execution of the original and amended judgments was done ex parte and in chambers. There are no court minutes reflecting otherwise.
The trial court has subsequently made it clear that the record was not provided to it at the time the judgment of forfeiture was signed, notwithstanding the standard form language in the judgment.[9]
*966 What is clear is that the most cursory review of the record by the prosecutor could have resulted in at least making the court aware that the |fi(flawed) claim was in the record, regardless of whether or not the filing bore any legal ramifications. The court should have been advised that the defendant was objecting to the forfeiture, had the prosecutor been aware of this fact. One thing appears certain: The original judgment would not have been signed in March of 2008, at least not by this trial judge, without a clear assessment of the legal effect, vel non, of the Ellis filing.[10] Instead, the court, operating in a vacuum, rendered its ex parte judgment, and the eagle soon flew[11] to the respective governmental interest holders.[12]
In November of 2008, eight months after the execution of the original judgment of forfeiture, and six months after the execution of the second amended judgment, the claimant filed a motion for appeal, which the state sought to dismiss.
After argument and a contested hearing in March of 2009, the trial court in June of 2009 rejected the state’s attempt to have claimant’s appeal dismissed. Claimant’s motion for new trial was rejected in July of 2009.
APPLICABLE LAW
This situation is controlled by the following:
• The Seizure and Controlled Dangerous Substances Property Forfeiture Act of 1989, ie., La. R.S. 40:2601-2622; and
\n* State of Louisiana v.2003 Infiniti G35 VIN# JNKCV51E93M02U67 and Kristofor Rebstock, 2009-1193 (La.1/20/10), 27 So.3d 824.
THE BOTTOM LINE
We find that the state properly served Ellis with the notices of pending forfeiture, and the claimant already knew enough, at the point of service, to have secured a lawyer to protect his interests.
We find that the state, having received no notice of claimant’s opposition, was entitled to proceed administratively to forfeit and disburse the proceeds, without necessity of further notice to claimant.
DISCUSSION
Ellis is out of court. The bottom line is that the state has complied with La. R.S. 40:2601, et seq., and Ellis has not.
Recent cases support the rulings of the trial court.
In State v. Six Hundred Seventy Six Dollars $676 U.S. Currency Seized from Branch, 31,095 (La.App.2d Cir.9/23/98), 719 So.2d 154, writ denied, 1998-2359 (La.1/8/99), 734 So.2d 1227, this court, through (now Chief) Judge Brown, stressed the mandatory procedural requirement of La. R.S. 40:2610, “which provides in part that the claim shall be sent to the seizing agency and to the district attorney by certified mail, return receipt requested. Branch failed to do this. In *967 stead, he filed his claim with the clerk of court which will not suffice.” Ellis made the same error.
The state Fifth Circuit has recently agreed, holding that the requirement of the Act stating that the claim shall be mailed to the seizing agency and to the district attorney by certified mail, return receipt requested, |Ris mandatory, not discretionary. See State v. Johnson, 06-647 (La.App. 5th Cir.1/30/07), 951 So.2d 1239.
In State v. 2003 Infiniti G35, supra, authored by Justice Clark, this language guides us:
As is apparent from its structure, language, and general tenor, the Act provides not only a process by which the State is able to have forfeited such property in a speedy, fair, and efficient manner, without the accumulation of litigation, storage, and maintenance costs, but also provides a means through which an innocent owner or interest holder can regain his property in a speedy and relatively inexpensive process. However, in order for the Act to function as intended, courts must ensure that both the State and the owner or interest holder strictly follow each of the Act’s detailed requirements for the various stages in the process.[13]
We also find 2003 Infiniti, stipra, to be quite helpful in this area. This language is especially instructive: “the owner or interest holder must file either a claim or a request for stipulation that ‘shall be mailed to the seizing agency and to the district attorney by certified mail, return receipt requested.’ ”
Ellis’s claim fell significantly short of the statutory requirements, resulting in his filing having no legal effect relative to the forfeitures. The state was entitled to rely upon the lack of receipt of any claim by certified mail. This reliance allowed the district attorney to apply for forfeiture and allocation of the property, pursuant to La. R.S. 40:2616. As in 2003 Infiniti, supra, there was no (valid) claim filed, meaning that the state was cleared to proceed on an administrative basis.
|9Our ruling today is in no way inappo-site to our ruling in State v. $790 Cash, 36,107 (La.App.2d Cir.6/12/02), 821 So.2d 609, in which this court held that any defects in claimants’ objection to forfeiture are waived if the state, without objection, allows the pre-forfeiture rule to be fully tried. These are not the facts pertaining to Ellis. $790 Cash bolsters the requirement of strict legal compliance in forfeiture situations.
The requisite strict reading of the Act does, indeed, operate both ways. “The failure to properly serve a defendant with process as required by law is a vice of form upon which a judgment can be nullified.” State v. 1987 Ford, 94-0803 (La. App. 1st Cir.3/3/95), 652 So.2d 633. Here, Ellis was properly served with each notice of forfeiture, and he timely secured counsel to respond to the notices, refuting any alleged prejudice occasioned by his purported illiteracy.
We are troubled by the state’s inability to get the VIN correct, after three tries. Though we and the jurisprudence rightfully require strict procedural compliance relative to forfeitures, the VIN problem, though embarrassing to the state, is de minimis. This clerical error is not fatal to the state’s claim. In addition, Ellis was *968 present, surrounded by drugs and cash, on the day the truck and title were taken.[14] He suffered no confusion as to what was taken and what was taking place that day.
_Jjj¡Ellis’s filing[15] is egregiously deficient in not strictly complying with the requirements of La. R.S. 40:2610, and “[a] petition is not a claim under the Forfeiture Act.” Wright v. Bryant, 94-579 (La.App. 3d Cir.12/7/94), 647 So.2d 625, writ denied, 95-0054 (La.3/10/95), 650 So.2d 1179.
Our opinion in State v. 1979 Cadillac Deville, 25,230 (La.App.2d Cir.12/1/93), 627 So.2d 729, is also distinguishable. In that case, we held that:
If, prior to entry of a “default” forfeiture judgment, the state had actual notice that Buckley wishes to contest the forfeiture, and actual notice of where Buckley is, then the state cannot ignore this information and seek a “default” judgment.
We further found in 1979 Cadillac De-ville, supra, that, given the actual notice received by the state, the trial court erred as a matter of law in its conclusion that the mailing requirements of the forfeiture statute outweigh a defendant’s fundamental right to challenge the forfeiture.
In this proceeding, of course, the district attorney never had formal or actual notice. He did not discover that the forfeiture was purportedly contested until several months after the judgments were signed, and long after the proceeds had been distributed.[16]
Confusingly, the defendant takes the position that he filed a timely notice of claim. The state counters that no claim was filed.
This dispute is actually a little more convoluted than either side indicates in brief. Our view is that Ellis’s flawed claim should have been ^disclosed to the court before the judgment was proferred and signed. Nevertheless, the law requires us to disregard the flawed claim, due to the lack of statutory compliance.
PROBLEMS
This disposition seems harsh, in that lingering questions remain about whether procedural due process has occurred relative to:
• Any interest of Janie H. Ellis in and to the pickup truck, which is titled in the names of A.J. Ellis, Jr., and Janie H. Ellis, 3504 Church St., Monroe, LA 71202;[17] and
• Any interest of Janie H. Ellis and Hazel V. Ellis in and to the proceeds seized from the IBERIA BANK accounts) in the names of Ms. Janie H. Ellis and Ms. Hazel V. Ellis. Indeed, we have nothing before us reflecting A.J. Ellis, Jr., as being an account holder.[18]
*969 CONCLUSION
Since the state complied with the applicable mandatory statutes, while Ellis did not, we find that the in rem judgment of forfeiture as to Ellis was legally rendered, and we affirm the judgment of the trial court.
We decline to assess attorney’s fees in favor of or against either party. We order that all costs of this appeal be paid by appellant.
DECREE
At appellant’s cost, the rulings of the trial court are AFFIRMED.
CARAWAY, J., dissents with written reasons.

. Actually, the lack of Notice of Judgment(s) is the point seized upon by the trial court in allowing this appeal to go forward, months after the judgment(s) were rendered.

. A narcotics interdiction unit under the umbrella of the Monroe Police Department.

. Later in these proceedings, the paperwork lists this cash seizure as $35,463, a $10 increase.

. The truck was titled in the names of A.J. Ellis, Jr., and Janie H. Ellis. They are married to each other.

. Account #6000000509 in IBERIA BANK was listed in the names of Ms. Janie H. Ellis and Ms. Hazel V. Ellis. Hazel V. Ellis Harris is the daughter of Janie H. Ellis.

.Oddly, there was no order attached, requesting a trial setting, which may or may not have made a difference in the timing of counsel's discernment of the invalidity of his claim on behalf of Mr. Ellis. Whether any revised strategy would have altered the case's outcome is speculative.

. The fruits of the original search warrant consisted of the drugs, pickup truck, title to truck, and the (now) $35,463 of cash, taken from the person of A.J. Ellis, Jr., and from his home at 3504 Church Street, Monroe, Louisiana.

. Consider these comments by the assistant district attorney at a much later argument in March of 2009, with our emphasis added: "But our law requires a claimant to file a claim within thirty days from the time he is given a notice of pending forfeiture. This case — or the record in this case reflects that Mr. Ellis never filed a claim. Our law says that when a claimant fails to file a claim, the District Attorney can move the Court to enter an order of forfeiture administratively. And nothing’s done in a suit record. It’s all administrative. And you have affidavits from the seizing agency that, you know, this is what they did and this is what we’re forfeiting and that no claims have been filed. We did that, Your Honor. That’s exactly what we did. Nobody provided the District Attorney's Office with a claim pursuant to law and we got an order from the Court forfeiting the assets for that reason. We distributed the money. The money has already been distributed pursuant to law. And then I get a notice of appeal from Mr. Ellis’ counsel saying that we want an appeal. And that’s the first news that I knew that there was any claim to these assets at all. And that would have been, let's see — the Court signed the original application for forfeiture on March 20, 2008. On November 26, 2008, that’s when I received a copy of the notice of appeal. So some March to November, whatever that math is. We get the money in March. We get an order of forfeiture in March and we distribute it pursuant to law. And in November of that year I find out that there’s a claim. Okay? Our law says that an owner must file a claim, that claim must be in proper form. It must be under oath with a penalty of false swearing hanging over your head. That claim must be given to the District Attorney’s Office and the seizing agency by certified mail. There’s a good reason for that, Judge. We won’t know of a claim if we don't get it. That’s what happened in this case. Mr. Ellis' lawyer didn’t file a claim. He filed a petition with the Clerk of Court. Did he serve the District Attorney’s Office? No, sir. He didn’t."

.The judgment starts off with this boilerplate language: "In this matter, the Court having reviewed the pleadings and documents, finding the law...."

. See specific comments of the trial court on this issue, found in footnote # 3 of the trial court's Reasons for Judgment (as to the challenged right to appeal), rendered, dated, and filed on June 19, 2009.

. "The eagle Dies on Friday" is an expression describing payday, the line being lifted from the lyrics of the classic blues tune "Call It Stormy Monday,” written in 1947 by Aaron "T-Bone” Walker. Perhaps the legendary B.B. King produced the most acclaimed recording of the song.

.20% of the net proceeds to the Task Force, 40% to the Monroe Police Department, 20% to the District Attorney, and 20% to the Criminal Court Fund.

. Cf., La. R.S. 40:2621. Statutory construction
The provisions of this Chapter shall be liberally construed to effectuate its remedial purposes. Civil remedies under this Chapter shall be supplemental and not mutually exclusive. They do not preclude and are not precluded by any other provision of law.

. The VIN listed in this original judgment of forfeiture did not match the VIN listed on the truck title. The state has twice sought and the court has twice executed ex parte amended judgments, in failed attempts to correct the VIN. Unfortunately, the VIN on the third judgment is still incorrect. None of the judgments has been served on Ellis.

. Labeled as a "Petition for Stipulation of Exemption And/or Notice of Claim Against Seized Property in Pending Forfeiture, and Request for Hearing for Return of Seized Property.”

. See footnote # 4, supra.

. Any claim for exemption of the pickup truck by Janie H. Ellis would have been fruitless because she could have never overcome the mandatory requirement of La. R.S. 40:2605(3).

. There was probable cause established in the affidavit of the seizing agency officer, relative to the initial seizures of the bank proceeds, but the showing was not overwhelming. Since the two ladies filed no claim, after due notice, we have nothing before us by which to consider any relief, assuming they were due any.